■ NASSAU SUFFOLK WHITE TRUCKS, INC., Respondent, v TWIN COUNTY TRANSIT MIX CORP. et al., Appellants.—In an action to recover for goods sold and delivered, in which defendants counterclaimed, *inter alia,* to recover damages for breach of implied warranty of fitness for a particular purpose, defendants appeal from a judgment of the Supreme Court, Nassau County, entered April 7, 1977, which is in favor of the plaintiff, after a nonjury trial. Judgment affirmed, with costs. Defendant-appellant Twin County Transit Mix Corp. agreed to purchase 10 concrete mixing trucks from plaintiff-respondent, a franchised dealer which is in the business of selling and servicing heavy duty trucks. The concrete barrels (the cement mixers) were purchased by Twin County from another company, not a party, which mounted the barrels on the trucks. Within one month after delivery of the first eight trucks, Twin County complained to plaintiff about breakdowns due to broken transfer case shafts and other problems. Plaintiff acknowledged the difficulties and agreed to take care of them to Twin County's satisfaction. When the ninth truck was delivered, a week following the letter, Twin County deducted $4,500 from the agreed purchase price of approximately $39,000. Twin County refused to pay anything for the tenth truck delivered, although it kept the truck and used it along with the others. This action was brought to recover the price of the tenth truck, the $4,500 withheld on the price of the ninth truck, and approximately $1,500 for tires sold by plaintiff to Twin County, which leases the trucks to

defendant J. J. A. Leasing. The corporate defendants are controlled by the individual defendants. Defendants interposed six counterclaims: breach of implied warranty for a particular purpose (first); breach of implied warranty of merchantability (second); damages for lost time ("down-time") when the trucks were out of service, and for repairs (third); lost profits (fourth); punitive damages for willful breach of warranty (fifth); and loss of reputation (sixth). The damages sought totaled $5,000,000. Plaintiff's position was essentially three-fold. Twin County's president, Joseph Muratore, had approved every component that was selected for the trucks that were ordered and, indeed, had rejected the first proposal submitted to him by plaintiff and had asked for certain changes, which were incorporated in plaintiff's second proposal. Muratore, according to plaintiff, was his own truck expert. Hence, in plaintiff's view, defendants had not relied upon its expertise in selecting the truck components and could not claim the benefit of section 2-315 of the Uniform Commercial Code, the warranty of fitness for a particular purpose. Second, any breakdowns in the trucks were related solely to the mounting of larger concrete barrels on the trucks than the ones defendants had originally said they would use, to wit, the mounting of 13-yard barrels rather than 12-yard barrels. Third, any implied warranties were specifically disclaimed by a clause in the agreement. Defendants' evidence went to show that Joseph Muratore was not an expert, but simply a customer who had described his needs and relied on plaintiff to select the appropriate truck components. Defendants called a truck expert whose opinion was that the truck breakdowns were due to an incompatible combination of a high torque engine with a low ratio rear end; to remedy the defects would require an expenditure of about $15,000 per vehicle. Defendant Jack Muratore produced papers to support the cost of repairs and the time the trucks had been out of service. Surprisingly, the total "down-time", by defendants' own records, was about 218 hours for the 10 trucks for the period from April, 1973 to July, 1975, which is less than 10 hours per year, per truck. Despite what appeared to be a curtailment by the trial court of proof on the counterclaims because of certain statements made by the court, defendants did, in fact, introduce evidence as to every element underlying their theories of recovery, insofar as these theories are consonant with what is permissible under the Uniform Commercial Code. What the code provides is that a buyer who has accepted goods, but notified the seller of a breach, preserves his right to establish any breach, but also that the buyer "must pay at the contract rate for any goods accepted" (Uniform Commercial Code, § 2-607, subd [1]). A buyer's damages for breach in regard to accepted goods is set forth in section 2-714 of the Uniform Commercial Code, the last subdivision of which refers to recovery for incidental and consequential damages "In a proper case" under section 2-715 of the Uniform Commercial Code. Defendants, as already noted, sought to show damages for breach of implied warranty of fitness for a particular purpose, as well as of merchantability (Uniform Commercial Code, §§ 2-315, 2-314, respectively). In addition, they sought to prove incidental and consequential damages for repairs, "down-time", lost profits and harm to reputation, as well as punitive damages. Insofar as the Special Term held the disclaimer clause effective to disclaim all warranties, it was in error. The code requires language that is "conspicuous" (see Uniform Commercial Code, § 2-316, subd [2]; § 1-201, subd [10]), which requirement is obviously not satisfied by the clause in question, which appears in print which is no larger than any other print on the entire page and smaller than some. The proof was clear, however, that no warranty of merchantability was breached. The trucks worked as heavy-duty trucks

("merchantable" does not mean perfect; see discussion of implied warranty of merchantability in White and Summers, Uniform Commercial Code, ch 9, §§ 9-6 to 9-8). They did break down, however, sufficiently often—beginning early on—to belie their fitness for the purpose for which they had been designed. The testimony conflicted sharply on this point as to who had selected the components that went into the design of trucks and whether the 13-yard barrels make a difference in the operation that 12-yard barrels would not have made. We find that the plaintiff was responsible for the component selection; any "misjudgment" made by it was picked up and questioned by its manufacturer, according to plaintiff's salesman, Masi, who was called by the defendants. Whatever requirement Joseph Muratore made known, such as the speed of the vehicle and preferred horsepower, plaintiff bore the ultimate responsibility, as a preponderance of the proof shows, of selecting components to meet the requirements. Moreover, we find that there is insufficient evidence to establish that the barrel made a significant difference in the breakdown of the trucks. The barrel manufacturer's refusal to certify the weight load under Federal safety standards was not shown to bear any relationship to the breakdowns, not even in the testimony of plaintiff's president, Mr. Guterding. At the same time, it is clear that defendants' own records to establish time lost, suprisingly for them, showed a minimum loss of time, which loss Special Term correctly attributed to normal wear and tear. Since that is so, a claim for lost profits obviously does not lie; it would be illogical in light of the proof. Moreover, defendants' evidence that an expenditure of $15,000 per vehicle is required to improve the trucks and keep them out of a state of disrepair also falls in the face of what the "down-time" records show. The counterclaims for impairment of reputation and for punitive damages for willful breach are, in this case, outside "the loss resulting in the ordinary course of events from the seller's breach" (see Uniform Commercial Code, § 2-714, subd [1]). What remains to be considered is what damages defendants proved on their first counterclaim and on that portion of the third counterclaim which sought to recover for repairs. The value formula of subdivision (2) of section 2-714 of the Uniform Commercial Code is satisfied in this case, based on the evidence, by the $7,000 allowed for repairs. We note in that regard that additional repair work was performed on the trucks by plaintiff. The proof was that the trucks are still in service and that their record of breakdowns is minimal. Hopkins, J. P., Martuscello, Latham and Gulotta, JJ., concur.